<u>NOT FOR PUBLICATION</u>                                          [Docket No. 34]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| KYLEF ANDERSON,  Plaintiff,  v.  WARDEN RICHARD HARRON, et al.,  Defendants. | Civil No. 08-0185(RMB)  **MEMORANDUM AND ORDER** |

**BUMB, United States District Judge:**

This matter comes before the Court upon a motion by the defendants, Richard Harron, Christine Smith, John Baldwin, John Yohn, and Christine Sexton, (the "Defendants") all officials at Cape May County Jail, for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  Proceeding <u>pro se</u>, the plaintiff, Kylef Anderson, (the "Plaintiff") an inmate at Cape May County Jail, brought this action pursuant to 28 U.S.C. § 1983, alleging that jail officials had abridged his religious freedom by excluding him from the jail's Ramadan meal program and by failing to facilitate weekly group prayers among the Muslim prisoners. Defendants now move for summary judgment on the grounds that they neither abridged Plaintiff's free exercise of religion under the United States Constitution, U.S. Const. amd. I, nor under the

1

Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, et seq. For the following reasons, the Court grants the motion for summary judgment.[1]

## BACKGROUND

In 2007, the Muslim holy month of Ramadan began on September 13th, (Defs.' Mot. 1-2), ten days after Plaintiff had first entered Cape May County Jail, (Pl.'s Dep. 5). On September 20th, Plaintiff filed a written request to participate in the jail's Ramadan meal program.[2] (Compl. 14.) The request was processed on September 27th, (Harron Aff. No. 4), and Plaintiff was placed on the Ramadan meal program beginning on September 28th, (id.). However, two or three days later, Defendant Smith removed Plaintiff from the program, since Plaintiff had indicated that he had "no religious affiliation" upon entering the jail. (Pl.'s

---

[1] Because Plaintiff has not filed any opposition to the summary judgment motion, the Court treats the motion as unopposed. Green v. Essex County Superior Court Clerk, No. 02-1872, 2006 WL 932055, *1 n.1 (D.N.J. April 6, 2006). As this is a motion for summary judgment, the Court will nonetheless consider the merits. Virgin Records America, Inc. v. Trinidad, No. 06-5914, 2007 WL 4264543, *3 (D.N.J. Dec. 3, 2007). However, since Plaintiff has failed to respond, the Court must take as true all well founded averments of fact made by Defendant. Fed. R. Civ. P. 56(e)(2); see also Herman v. City of Chi., 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing.").

[2] Muslims may not eat until after sundown during the month of Ramadan. The meal program is an accommodation of this religious practice for Muslim inmates.

Dep. 15.)³

    Plaintiff contested his removal from the program by filing a grievance. (Pl.'s Grievance Form.) After four days to a week,⁴ Defendant Smith was ordered to place Plaintiff back on the program since "it is the policy of [Cape May County Jail] that any inmate can indicate a preference for a religious meal at any time." (Harron Aff. No. 5.) In the days he was excluded from the meal program, Plaintiff "never stopped . . . fasting [but] . . . save[d] [his] cold food until the sun f[e]ll." (Pl.'s Interrog. No. 17.)

    Plaintiff also alleges that the jail failed to accommodate his "obligat[ion] to [attend] Jumah, a Friday congregation[al] prayer service." (Pl.'s Compl. No. 6.) For security reasons, the jail allows communal services only if a religious leader is present to conduct them. (Harron Aff. No. 6.) Warden Harron testified that "for some years prior" to Plaintiff's protests, he was "personally . . . involved in contacting various mosques in

---

    ³ Plaintiff has alleged that jail officials made discriminatory comments when he protested his exclusion from the meal program. For example, Officer Smith allegedly told him, "I wouldn't let people like you do anything but stay locked up, if it were up to me," (Pl.'s Interrog. No. 10); Officer Sexton allegedly told him she did not "care about [his] rights or Ramadan and just walked away," (id. at 22); and Officer Baldwin "told [him] to shut up and go to [his] cell and let the jail handle it," (id. at 24).

    ⁴ Plaintiff provides the date of October 6, 2007 in his deposition. (Pl.'s Dep. 21.)

the hopes of obtaining . . . an [i]mam to conduct Muslim religious services," however the "attempts were unsuccessful." (Harron Aff. 7.) Plaintiff was also allowed to contact two Muslim worship centers to search for a religious leader, but was unsuccessful. (Id.)[5]

## LEGAL STANDARDS

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials . . . and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. A genuine issue of material fact will exist when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court "draw[s] all reasonable inferences in favor of the non-moving party." Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). The moving party bears the initial burden to demonstrate the absence of facts supporting the nonmoving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The burden then shifts to the non-moving party to prove that there is in fact a genuine issue of material fact.

---

[5] Plaintiff has alleged that the Warden began allowing religious services after this lawsuit was filed, (Pretrial Mem. Pt. B.); however, the record does not reveal whether those services were supervised.

However, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996) (citing Celotex, 477 U.S. at 323). Therefore, the non-moving party must provide more than "bare assertions, conclusory allegations or suspicions to sustain its case." Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). If the party opposing summary judgment fails to respond to the motion, "summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2). See Herman v. City of Chi., 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing.").

## DISCUSSION

Although the Complaint raises a cause of action only under 42 U.S.C. § 1983, the Court must liberally construe pro se complaints to apply all relevant law. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003) (quoting Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002)). Accordingly, the Court will first address Plaintiff's constitutional claim and will then address whether Plaintiff has a meritorious claim under RLUIPA, 42 U.S.C. § 2000cc-1, et seq.

### Constitutional Claim

5

As to Plaintiff's claim regarding the Ramadan meal program: Plaintiff has not satisfied the requirement of 42 U.S.C. § 1983 that the officials' conduct rise to the level of "intentional . . . , gross negligence, or reckless indifference." Davidson v. O'Lone, 752 F.2d 817, 826 (3d Cir. 1984). In other words, mere negligent conduct cannot give rise to a § 1983 claim. Id. at 829.

Here, the conduct at issue amounts to negligence. Defendant Smith "properly processed the Ramadan meal request and placed [P]laintiff on the Ramadan meal list." (Defs.' Mot. 4.) Though Defendant Smith subsequently removed Plaintiff from the meal program -- "an error" due to a "misunderstanding" -- Plaintiff was re-enrolled in the program "within a few days." (Id. at 4-5.) This account of the underlying facts is well supported by Warden Harron's affidavit, (Harron Aff. No. 5), as well as Plaintiff's own deposition, (Pl.'s Dep. 14, 23). Because Plaintiff has not responded to the summary judgment motion, the Court takes as true this account of the underlying facts. See Brandon v. Warden, N. State Prison, 2006 WL 1128721, *3 (D.N.J. Apr. 27, 2006) (holding that when a non-moving party has not responded to a motion for summary judgment, courts may "treat all facts properly supported by the movant to be uncontroverted" (quoting Allebach v. Sherrer, No. 04-0287, 2005 WL 1793726, *5 (D.N.J. July 27, 2005))); see also Schoch v. First Fid.

Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."). Accordingly, the jail's brief and mistaken exclusion of Plaintiff from the Ramadan meal program cannot establish a § 1983 claim.[6]

Plaintiff's claim regarding the jail's failure to accommodate religiously mandated communal worship raises a more difficult constitutional question. Prisoners "clearly retain protections afforded by the First Amendment, including . . . the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974); Cruz v. Beto, 405 U.S. 319 (1972) (per curiam)). However, "lawful incarceration" inevitably involves some limitations on an inmate's "privileges and rights,"

---

[6] Even if the Court assumed that the facts were disputed, no record evidence indicates that the officers acted intentionally. Plaintiff has alleged that Defendant Smith commented, "I wouldn't let people like you do anything but stay locked up, if it were up to me." (Pl.'s Interrog. No. 10.) Without more, this one comment does not provide a reasonable basis for a jury to conclude that Defendant Smith acted intentionally. Compare Lovelace v. Lee, 472 F. 3d 174, 181 (4th Cir. 2006) (finding sufficient evidence to conclude that an officer acted intentionally in acting to exclude the plaintiff from the Ramadan meal program based upon their "contentious" relationship; the officer's refusal to review surveillance tapes, check the prisoner's ID card, or admit misidentification; and witness reports that cast doubt upon the officer's account). Similarly, Plaintiff's claims against the remaining defendant-officers rely upon inappropriate comments they allegedly made, which alone are not sufficient to establish intent. See Lovelace, 472 F.3d at 202 (holding that the failure of officers to quickly remedy the mistake made by a fellow officer "suggest[s] only negligence").

id. (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)), resulting from a concern for "penological objectives" and "institutional security," id. (quoting Pell, 417 U.S. at 822-23); see also Turner v. Safley, 482 U.S. 78, 85 (1987) ("Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities."). Thus, a prison regulation that impinges upon an inmate's constitutional rights will be considered "valid if it is reasonably related to legitimate penological interests." Dehart v. Horn, 227 F. 3d 47, 51 (3d Cir. 2000) (en banc) (quoting Turner, 482 U.S. at 89). This rational basis test is performed by considering four factors: "(1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist." Waterman v. Farmer, 183 F. 3d 208, 213 n.6 (3d Cir. 1999) (citing Turner, 482 U.S. at 89-91).

Prisons have a strong interest in controlling gang activity, and this interest is, of course, rationally related to prison policies that limit unsupervised group activity. Allah v. Al-Hafeez, 208 F. Supp. 2d 520, 532 (E.D. Pa. 2002). Applying the

four Turner factors to Plaintiff's claim further supports this proposition. First, the jail's policy is rationally related to the legitimate government interest of security. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 353 (1987) (holding that prevention of some prisoners from attending Jumah was reasonably related to the legitimate interest of prison security); Smith v. Kyler, 295 Fed. Appx. 479, 481 (3d Cir. 2008) (holding that a policy of providing chaplains for "only the largest major faith groups and to prohibit worship in the absence of an approved, volunteer Faith Group Leader" is "rationally connected" to the "legitimate interest" of "maintaining prison security"). The Court defers to Warden Harron's judgment that "unsupervised gatherings . . . have been found to facilitate gang affiliation, contraband distribution and violent confrontations." (Harron Aff. No. 6.)

Second, Plaintiff has adequate alternatives to practice Islam. See Smith, 295 Fed. Appx. 479, 482 (concluding that though Plaintiff was not able to participate in congregational prayer, he had alternative means of practicing his religion including "maintain[ing] religious books and materials in [his] cell, . . . elect[ing] to have a Personal Religious Advisor worship with [him], and . . . seek[ing] [an] exemption[] from the DOC hair length requirement"); Allah, 208 F. Supp. 2d at 530 (concluding that though the plaintiff-prisoner was unable to

9

attend religious services for security reasons, the alternatives of praying, meditating, and discussing religion with inmates outside of his cell were sufficient). Here, although Plaintiff was not permitted to attend congregational services, he was permitted to "practice his religion in his jail cell or in [his] pod." (Harron Aff. No. 8.)  These alternatives are sufficient.

Third, the impact of accommodating Plaintiff by allowing religious services would impose an unreasonable burden on the jail. Allowing the jail's Muslim population to worship together without the leadership of an imam would place a substantial burden upon jail security. See e.g., Smith, 295 Fed. Appx. at 482 ("[P]roviding group religious services . . . impose[s] a substantial burden on prison staff and resources.").

Finally, Plaintiff has not identified alternatives to the prison's current policy that would impose only a de minimis cost. See O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987) ("[P]lacing the burden on prison officials to disprove the availability of alternatives . . . fails to reflect the respect and deference that the United States Constitution allows for the judgment of prison administrators."). The previously discussed available alternatives are either impractical or excessively burdensome.

Therefore, summary judgment should be granted in favor of Defendants since Plaintiff cannot establish a violation of his Free Exercise rights.

**RLUIPA Claim**

Congress enacted RLUIPA to "grant heightened protection to prisoners" than is mandated by the <u>Turner</u> analysis. <u>Washington v. Klem</u>, 497 F.3d 272, 277 (3d Cir. 2007). RLUIPA applies strict scrutiny to prison regulations imposing a substantial burden on prisoners' free exercise of religion. Specifically, RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. Under the statute, plaintiffs bear the burden of proving that the prison regulation imposes a substantial burden upon the practice of their religion. <u>Klem</u>, 497 F.3d at 284. A substantial burden on a prisoner's religion will exist where: (1) he is "forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." <u>Klem</u>, 497 F.3d at 280.

Both of Plaintiff's claims -- exclusion from the Ramadan meal program and denial of communal worship -- fall short of a

11

viable RLUIPA claim because they do not establish a "substantial burden" on Plaintiff's religious practice.

As to the Ramadan meal program claim:  Plaintiff's removal from the program, as previously discussed, resulted from a misunderstanding, which was remedied in short order.  (Defs.' Br. 4-5.)  Courts have declined to find a substantial burden when such procedural mistakes and subsequent remedies occur.[7]  See e.g., Hysell v. Pliler, 2008 U.S. Dist. LEXIS 2721, at *25 (E.D. Cal. Jan. 11, 2008) (finding no substantial burden when denial of religious materials was admitted to be an "error and efforts were taken to rectify the situation"); Greenberg v. Hill, 2009 U.S. Dist. LEXIS 28027, at *5 (S.D. Ohio Mar. 31, 2009) (finding no substantial burden when Passover meal was not provided on two out of eight days due to an "unintentional oversight resulting from inadvertent miscommunication," and no such mistake had been made in the three years prior to the Passover in question).  Compare Lovelace, 472 F.3d at 194 (finding that Plaintiff had valid RLUIPA claim since there was ample evidence that officer committing an identification error had acted intentionally to infringe on Plaintiff's religious rights and Plaintiff had been

---

[7]Notably, courts have been reluctant to find prison officials liable under RLUIPA when the alleged conduct amounts to mere negligence.  See Lovelace v. Lee, 472 F.3d 174, 194 (4th Cir. 2006) ("Adoption of the negligence standard would open prison officials to unprecedented liability for burdening an inmate's religious exercise.").

denied Ramadan meals for twenty-four out of thirty days). The Court finds no substantial burden upon Plaintiff's religious practice here. Accordingly, the mistaken and temporary exclusion of Plaintiff from the Ramadan meal program will not give rise to a successful RLUIPA claim.

As to the claim that Plaintiff was denied communal worship: In a similar case, <u>Smith v. Kyler</u>, 295 Fed. Appx. 479, 483 (3d Cir. 2008), the Third Circuit held that there was no substantial burden when religious services were prevented, not by a prohibition of such gatherings, but because of a lack of volunteers. Here, too, the jail prohibits communal prayer services only in the absence of a religious leader. Also, since Plaintiff may pray alone or with other members of his pod, (Harron Aff. No. 8), the jail is not pressuring him to violate his beliefs. <u>See</u> <u>Smith</u>, 295 Fed. Appx. at 483 (citing alternatives such as meeting with a "Personal Religious Advisor" or keeping religious books in the prison cell). Accordingly, because Plaintiff cannot establish that the absence of religious services was a substantial burden on the exercise of his religion, the Court holds that the jail's policy of prohibiting unsupervised religious services is not a violation of RLUIPA.

Therefore, for all of the aforementioned reasons,

**IT IS** on this, the **7th** day of **July 2009**, hereby

**ORDERED** that Defendants' motion for summary judgment is

**GRANTED** as to all claims; and it is further

  **ORDERED** that the CLERK OF THE COURT shall **CLOSE** this file.


                <u>s/Renée Marie Bumb</u>
                RENÉE MARIE BUMB
                UNITED STATES DISTRICT JUDGE